**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANIEL BRANCH, as an individual and on behalf of all similarly situated employees, | No. 16-55200 |
| | D.C. No. 2:15-cv-03303-R-GJS |
| Plaintiff - Appellee, | MEMORANDUM[*] |
| v. | |
| PM REALTY GROUP, L.P., | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted March 8, 2016
Pasadena, California

Before: MURPHY,[**] PAEZ, and NGUYEN, Circuit Judges.

Daniel Branch filed a class action against PM Realty Group, LP

("PMRG") alleging violations of California's Labor Code. The complaint

alleged, inter alia, that PMRG failed to provide timely, workfree meal and

---

[*]This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals, Tenth Circuit, sitting by designation.

rest breaks to nonexempt employees. *See Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 528-43 (Cal. 2012) (discussing relevant law). PMRG removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1453. In support of its assertion jurisdiction was proper, PMRG made assumptions about the number of meal and rest breaks put at issue by Branch's complaint. *See id.* § 1332(d)(2). The district court remanded the case to state court, concluding the record did not support the most conservative of PMRG's assumptions as to the number of meal and rest breaks at issue. It left unresolved numerous factual and legal disputes about other assumptions underlying PMRG's theory of damages, both as to Branch's meal and rest break claims and other claimed violations. We granted PMRG permission to appeal. *See id.* § 1453(c)(1). We **reverse** and **remand** for additional proceedings.

The eight claims in Branch's complaint arise out of PMRG's labor relations. The second and third claims assert PMRG failed to provide proper meal and rest breaks.[1] Branch claimed PMRG's failure to schedule

---

[1]An employee in California is entitled to one workfree rest break per four hours, or major fraction thereof, worked. *Brinker*, 273 P.3d at 528-30. As to an eight-hour shift, one rest break should generally fall on either side of the meal break. *Id.* at 530-31. "[A]n employer must provide the employee with a [timely, workfree] meal period of not less than 30 minutes

(continued...)

2

shifts in an overlapping manner was a class-wide flaw that resulted in meal and rest periods being missed, late, or interrupted. He alleged class members were not paid the statutory premium (one hour's pay) required for noncompliant meal and rest periods.

PMRG removed the case to federal court. In support of its claim the amount in controversy exceeded $5,000,000, PMRG provided a declaration attesting to the number of nonexempt hourly employees, the number of weeks they worked, and their average hourly rate of pay. PMRG asserted the complaint placed every rest and meal period in contention. Utilizing a class of 184 members, an average hourly wage of $23.41, and a rate of five missed meal and five missed rest breaks per employee per week, PMRG calculated an amount in controversy of $4,498,365.[2] Alternatively, PMRG calculated the damages at issue if only two meal and two rest period violations per workweek per putative class member were put at issue, which yielded an amount in controversy of $1,799,346. When these estimates

---

[1](...continued)
for workdays lasting more than five hours, and provide two meal periods for workdays in excess of 10 hours, subject to waiver in certain circumstances." *Id.* at 534 (quotation and alteration omitted).

[2]It is not clear the number of meal and rest breaks at issue under this approach would be limited to five of each per week. *See supra* n.1.

were considered together with estimates of amounts in controversy on other claims, PMRG alleged a total amount in controversy of anywhere from $6,422,666 to $12,068,025.

Branch moved to remand the case, challenging PMRG's contention that the amount in controversy exceeded $5,000,000. A few days later, he filed a motion for class certification. That motion alleged that PMRG's failure to provide proper meal and rest breaks flowed from California-law-noncompliant policies in employee handbooks that applied "uniformly" to all class members. Attached to the motion were the declarations of Branch and three proposed class members. The declarations uniformly assert that class members were "rarely" able to take workfree rest breaks and frequently took late or interrupted meal breaks.[3]

---

[3]Branch declared he "rarely if ever was able to take a ten (10) minute, uninterrupted rest period"; he "frequently received work-related calls" during his meal periods; and "[a]bout three (3) times per week, [he] began [his] meal break six (6) hours after the start of [his] shift." Charles Bunch declared he "was not always able to take a thirty (30) minute uninterrupted meal break because of the constraints of [his] work schedule" and "rarely, if ever, was able to take a ten (10) minute uninterrupted rest break." Raul Becerra declared he "was not always provided a thirty (30) minute uninterrupted meal break" and that "[d]uring our weekly conference calls with our office manager, route technicians would complain about not getting meal breaks." William Barsamian declared he "rarely, if ever, was able to take a thirty (30) minute uninterrupted meal break"; was "[a]t certain times . . . required to work more than ten (10) hours in one day, but

(continued...)

4

In its response to Branch's motion to remand, PMRG quoted from the declarations and argued the record supported an amount in controversy based on at least three improper meal and five improper rest breaks per week. Even setting aside that evidence, PMRG asserted its assumption of two meal and two rest break violations per week per nonexempt employee was reasonable based on the broad language of Branch's complaint.

In his reply, Branch did not address the declarations. Instead, he asserted (1) the class was not as large as utilized in PMRG's damages assumptions because the parties had stipulated to a smaller class, and (2) PMRG did not explain why an average hourly wage was the statistically appropriate variable for calculating the amount in controversy with regard to rest and meal breaks.

Without holding a hearing, the district court granted Branch's motion to remand. It focused only on the conservative valuation of the class claims propounded by PMRG. That is, although PMRG asserted the class-certification declarations supported a total amount in controversy exceeding $11,000,000, the district court limited its analysis to the $6,422,666 PMRG

[3](...continued)
[] did not receive a second meal break"; and "rarely, if ever, was able to take a ten (10) minute uninterrupted rest break."

5

asserted flowed from the language of the complaint. Of the $6,422,666 estimate, PMRG attributed $1,799,346 to the meal and rest break claims. Thus, absent a valid theory of damages as to the meal and rest break claims, PMRG would not be able to establish an amount in controversy exceeding $5,000,000. The district court concluded that though the record "perhaps" demonstrated Branch missed two meal and two rest breaks per week, that violation rate could not be extended to the entire class because the evidence identified by PMRG said "nothing of the frequency of which PMRG would deprive class members of their entitled meal periods or rest periods." It did not address the numerous additional legal issues and factual questions raised by the parties in the filings relating to Branch's motion to remand.[4]

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in-controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). Whether the assumptions underlying a defendant's theory of damages are reasonable is a question of law reviewed

---

[4]Even as to the meal and rest break claims, the district court did not address the appropriate wage-rate multiplier or class size.

6

de novo. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1196 (9th Cir. 2015); *LaCross*, 775 F.3d at 1203.

The district court erred in ruling PMRG failed to identify evidence to support an assumed violation rate of at least two meal and two rest breaks per week worked per employee. Branch's class-certification motion alleges that PMRG's failure to provide meal and rest breaks in a manner consistent with California law flows from policies that applied "uniformly" to all putative class members. *See LaCross*, 775 F.3d at 1202 (noting that language in the complaint indicating a uniform class-wide impact supported employer's theory of damages). The declarations attached to Branch's motion to certify the class indicate relevant employees suffered extensive meal break and almost universal rest break violation rates. Given this evidence, PMRG's extrapolated violation rate of two noncompliant meal

breaks per week[5] and two noncompliant rest breaks per week[6] is, at a minimum, reasonable.[7]

The district court is **REVERSED**. The matter is **REMANDED** to the district court for further proceedings. To accurately determine whether PMRG has demonstrated that the claims of the putative class exceed $5,000,000, the district court should determine the amount placed in controversy by each of the alleged violations of the California Labor Code and each of the numerous additional issues it did not reach in its original remand order. Among the numerous issues the district court should resolve is whether a higher assumed rate of noncompliant meal and rest breaks over the minimum is reasonable, the validity of PMRG's use of an average wage

---

[5]This violation rate is less then 40%, as California law mandates more than one meal break on any given day an employee works a shift of at least ten hours. *See supra* n.1. Barsamian declared that he sometimes worked more than ten hours and was denied a second meal break. *See supra* n.3.

[6]This violation rate is close to 20%, as a work shift of eight hours would generally result in two mandatory rest periods. *See supra* n.1.

[7]We reject PMRG's assertion that Branch's use of the term "at all relevant times" in the complaint allows it to assume a 100% violation rate. The term "at all relevant times" in Branch's complaint does not refer to a violation rate. Instead, it alleges a uniform policy which led to scheduling failures that "often" resulted in noncompliant meal periods. Notably, the term "at all relevant times" does not even appear in the section of Branch's complaint dealing with rest breaks.

rate, and the use of a class of 184 members to calculate the amount in controversy as to Branch's meal and rest break claims.  Although it need not make detailed findings, its findings must be sufficient to allow adequate appellate review.  The parties are free to present additional evidence to resolve the issues left unresolved in the district court's original remand order.  *Ibarra*, 775 F.3d at 1199.   PMRG's motions to supplement the record and to take judicial notice are **DENIED** as moot.

      **REVERSED and REMANDED.**